STATE OF NORTH CAROLINA v. HARRY BERT HEWETT

No. 8813SC499

(Filed 21 February 1989)

1. **Rape and Allied Offenses § 4.2— child sexual abuse victim— denial of motion for independent medical examination—no error**

The trial court did not err in a prosecution for first degree rape, first degree sexual offense, incest, and taking indecent liberties with a minor by denying defendant's motion for an independent medical examination of the two victims where defendant did not make a credible showing that the additional examinations would have been probative or necessary. A trial judge would have the discretionary power to permit a second physical examination of an alleged sexual abuse victim if the defendant showed the court that the examination would be probative, that it was necessary to the defendant's preparation of his defense, and if the victim or the victim's guardian consented to the examination.

2. **Rape and Allied Offenses § 4.1— sexual abuse of daughters— prior incidents—admissible**

The trial court did not err in a prosecution for rape, first degree sexual offense, incest, and taking indecent liberties with a minor involving defendant's two daughters by denying defendant's motion in limine asking that the State be allowed to present only evidence as to events on the two dates in the State's bill of particulars. The testimony was in line with the type of evidence our courts have permitted in the past

1

STATE v. HEWETT

[93 N.C. App. 1 (1989)]

under the common scheme or plan exception, and weighing the probative value of the evidence against the prejudice to defendant was within the discretion of the judge. N.C.G.S. § 8C-1, Rule 404(b).

**3. Rape and Allied Offenses § 5— first degree sexual offense with a child—evidence sufficient**

The trial court correctly denied defendant's motion at the close of all the evidence to dismiss the charges of first degree sexual offense, which the bill of particulars listed as fellatio, where the jury could have found that fellatio was performed on defendant by one of his daughters from the daughter's testimony and by following the judge's instruction.

**4. Rape and Allied Offenses § 19— taking indecent liberties with a child—evidence sufficient**

The trial court correctly denied defendant's motion to dismiss the charges of taking indecent liberties with his two daughters where the testimony of the children more than adequately demonstrated that defendant took indecent liberties with them. Moreover, the instruction given in this case benefited defendant in that the State need not prove a touching of the child to prove the elements of indecent liberties; in this case, the evidence was that defendant disrobed in the children's presence and engaged in intercourse with each child in the presence of the other. The State would have adequately proven the elements of indecent liberties even if the charge had been based solely on defendant's causing the children to witness the sexual conduct.

**5. Criminal Law § 134.2— sexual abuse of daughters—sentencing hearing—continuance denied**

The trial court did not err by denying defendant's motion for a continuance before conducting the sentencing hearing after defendant was convicted of rape, first degree sexual offense, incest, and taking indecent liberties with his daughters. Although the judge indicated that he was denying the motion because he did not have any leeway in at least four of the sentences, the State explicitly asked for consecutive terms at the hearing and defendant explicitly asked that the sentences run concurrently. The Court of Appeals did not believe that the judge labored under a mistaken notion that our statutes mandated consecutive life sentences for four of defendant's

convictions, and did not believe that defendant demonstrated good cause to continue the hearing.

**6. Witnesses § 1.2— nine-year-old sexual abuse victim—recess to regain composure—no error**

There was no abuse of discretion in a prosecution for rape, first degree sexual offense, incest, and taking indecent liberties with a minor in allowing a nine-year-old victim to interrupt her testimony and leave the courtroom accompanied by a rape crisis counselor, the assistant district attorney prosecuting the case, and the district attorney. The judge acted properly by calling a recess to afford the victim an opportunity to regain her composure.

**7. Criminal Law § 86.8— child sexual abuse victim—prosecutor's question concerning her truthfulness—not character evidence**

There was no error in a prosecution for rape, first degree sexual offense, incest, and taking indecent liberties with a minor in allowing the prosecutor to ask a victim whether she recalled indicating that she understood what it meant to tell the truth and later if she had testified truthfully where the first question occurred at a point where the child was not responding to the State's questions and was simply an attempt to prompt the witness to speak, and the second followed a cross-examination in which the victim was asked if she had ever told a lie. Neither question produced improper character evidence in contravention of N.C.G.S. § 8C-1, Rule 608(a), and, even if error had resulted, the error would have been harmless.

**8. Criminal Law § 86.8— child sexual offense victims—questions concerning specific instances of untruthfulness not allowed— no error**

The trial court did not err in a prosecution for rape, first degree sexual offense, incest, and taking indecent liberties with a minor by not permitting a defense witness to testify as to specific instances of untruthfulness by the children.

**9. Rape and Allied Offenses § 19— child sexual abuse victim— use of anatomical dolls and drawings—no error**

There was no error in a prosecution for rape, first degree sexual offense, incest, and taking indecent liberties with a minor in allowing the victims to use anatomical dolls during their testimony, in allowing one victim to testify about a

drawing she had made, or in admitting that drawing into evidence.

**10. Criminal Law § 89— sexual abuse of children—prior statements—admissible as corroboration**

There was no error in a prosecution for rape, first degree sexual offense, incest, and taking indecent liberties with children from the admission of corroborative testimony concerning statements made to a child medical examiner, a social worker, and a detective.

**11. Criminal Law § 102.6— child sexual abuse—prosecutor's closing argument—no error**

There was no error in a prosecution for rape, first degree sexual offense, incest, and taking indecent liberties with a minor where the district attorney during her closing argument attempted to read a passage from a Supreme Court opinion but defendant objected and the trial judge sustained the objection; the prosecutor was allowed to quote from the Bible during her argument to the jury; and defendant's objection that the assistant district attorney was implying that defendant had charged the State with fabricating its case was sustained.

**12. Rape and Allied Offenses § 6— child sexual abuse—refusal to give defendant's requested jury instructions—no error**

The trial court did not err in a prosecution for rape, first degree sexual offense, incest, and taking indecent liberties with a minor by not giving defendant's requested instructions on alibi, the credibility of child witnesses, and on expert witnesses where defendant's request for the instruction on expert testimony came after the judge had instructed the jury and was not in writing; defendant contended that the offenses had not occurred rather than that he was somewhere else at the time of the offenses; and the decision whether to instruct the jury on a child's credibility is a matter within the judge's discretion.

**13. Jury § 7.8— excusal of juror—possible relationship to defendant—no error**

There was no prejudice in an action for rape, first degree sexual offense, incest, and indecent liberties with a minor from the judge's excusing of a juror after the juror told the court he might be related to defendant because the State at that

time had one peremptory challenge left and could have exercised that challenge had the judge not removed the juror.

APPEAL by defendant from *Henry W. Hight, Jr., Judge*. Judgment entered 10 September 1987 in Superior Court, BRUNSWICK County. Heard in the Court of Appeals 6 December 1988.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Ellen B. Scouten, for the State.*

*Ramos and Lewis, by Michael R. Ramos, for defendant-appellant.*

BECTON, Judge.

On 10 September 1987, a jury convicted the defendant, Harry Bert Hewett, Jr., of two counts of first degree rape, two counts of first degree sex offense, two counts of incest, and two counts of taking indecent liberties with a minor. The victims of these crimes were defendant's daughters, whom we shall refer to as "A. H." and "T. H." The trial judge sentenced defendant to four consecutive life terms for the rape and sex offense convictions, to consecutive terms of four and one-half years for the incest convictions, and to consecutive three-year terms for the indecent liberties offenses. From this judgment, defendant appeals. We find no error.

The State's evidence tended to show that A. H. and T. H. were the natural daughters of defendant. Between January and June of 1987, the children resided with their grandmother, defendant's mother. On 14 February 1987, defendant, defendant's mother, his girlfriend, and the children went to a shopping center in Shallotte. A. H. testified that she and T. H. remained in the car with defendant while the women shopped. Defendant told A. H. to remove her clothing, and she did so. Defendant then touched A. H. on her vagina with his penis and hand. T. H. testified that she took down her panties, and defendant touched her on her vagina and on her "titty." She further testified that she and A. H. touched defendant's penis with their lips.

The State's evidence also showed that on 29 March 1987, defendant took A. H. and T. H. to his home. Both children testified that no one besides themselves and defendant were at defendant's residence at the time. A. H. and T. H. testified that they and defendant removed their clothing, and defendant got onto the bot-

**STATE v. HEWETT**

[93 N.C. App. 1 (1989)]

tom bunk of the children's bunk beds. A. H. testified that defendant penetrated her vagina with his penis and with his finger. T. H. testified that she and her sister took turns "getting up on Daddy" and that each child took turns "ke[eping] an eye out to see if anybody would come." T. H. testified that defendant penetrated her vagina with his penis.

At the time of the incidents on 14 February and 29 March, A. H. was nine years old, and T. H. was eight.

Defendant testified that he had never been alone with the children in the automobile on 14 February. Defendant's mother and his girlfriend gave corroborative testimony on this point. Defendant also testified as to his whereabouts with the children on 29 March; at no time did he testify to taking them to his home on that date. Again, defendant's mother and his girlfriend offered corroborative evidence.

On appeal, defendant has brought forward 19 assignments of error. Additional facts relevant to issues defendant has raised will be set out as needed.

I

[1] Defendant assigns error to the trial judge's denial of his pretrial motion for an independent medical examination of A. H. and T. H.

A

On 10 April 1987, Dr. James Forestner, the child medical examiner for Brunswick County, examined the children at the request of the Brunswick County Department of Social Services. At the examinations, Dr. Forestner asked the children to describe what their father had done to them. He also conducted physical examinations. Dr. Forestner made two written reports — one report per child — of his findings. Defendant received copies of Dr. Forestner's reports through discovery.

Dr. Forestner wrote that A. H.'s hymenal ring, her vaginal opening, "f[ell] open to some 8 m[illemeters] and ha[d] a thickened internal edge." The ring "appear[ed] to have been injured and healed." T. H.'s vagina "gape[d] to 7 or 8 m[illemeters and the] edge of the hymenal ring [was] somewhat thickened and g[ave] the impression of having been irritated and healed." On both reports, Dr. Forestner wrote that the physical findings were consistent

with, but not diagnostic of, the kind of sexual abuse the children had described to him. Dr. Forestner testified that according to the "consensus group" of the American Medical Association, a vaginal gaping of ten millimeters is "pretty much proof of penetration" while "[a]nything over four millimeters . . . is very suggestive of penetration." On both of his reports, Dr. Forestner wrote that he believed the children had been sexually abused. He wrote, and repeated at trial, that he based his conclusion upon the physical findings coupled with what the children had told him.

On 8 July 1987, defendant filed a motion for additional medical examinations of the children, these to be done by an expert of defendant's choosing. Defendant claimed Dr. Forestner's conclusion that the children had been sexually abused did not follow from the physical findings which the doctor said were merely "consistent with" but not "diagnostic of" abuse. Defendant alleged that the findings and the conclusions were inconsistent with one another.

The court heard defendant's motion on 8 September. Defendant's brother, the court-appointed custodian of the children, testified that he did not object to the examinations taking place. The judge denied defendant's motion in a written order on 9 September. The judge found that the requested examinations "could compromise the mental health and well-being of the . . . children," that Dr. Forestner's findings were not inconsistent but were "simply a statement that the results of the physical examination could have several origins, one of which is consistent with sexual abuse," that defendant had made no showing to the court of a need for the additional examinations, and that the examinations would serve only to place the children in "a potentially embarrassing and traumatic situation without [producing] any benefit to defendant."

B

Defendant argues that the children's bodies are "physical evidence . . . susceptible to objective tests and examinations like any other physical evidence which is to be used at trial." He contends that this "evidence" is therefore discoverable under N.C. Gen. Stat. Sec. 15A-903(e) (1988), which in part provides that "upon motion of a defendant, the court must order the prosecutor to permit the defendant to inspect, examine, and test, subject to appropriate safeguards, any physical evidence . . . available to the prosecutor if the State intends to offer the evidence . . . ." Defendant contends that the trial judge's refusal to grant him the opportunity to have

the children examined by a second expert denied him the right "to have available evidence which he might legitimately offer" to rebut or impeach Dr. Forestner's testimony.

Defendant argues that had he been arrested for possessing white powder, which the State subsequently tested and concluded to be cocaine, he would plainly have a right to have his own expert conduct a second test upon the substance. He argues that the examinations he requested in this case are no different. We reject defendant's analogy. Powder does not have dignity, and courts are rightly solicitous when a human being's privacy faces invasion. At the same time, we recognize that this defendant has been convicted of some of our most serious non-capital offenses, and our concern for his due process rights is, likewise, very strong. *See State v. Jones*, 85 N.C. App. 56, 65, 354 S.E. 2d 251, 256 (1987), *disc. rev. denied*, 320 N.C. 173, 358 S.E. 2d 62 (1987), *cert. denied*, --- U.S. ---, 98 L.Ed. 2d 404 (1987) (because Sec. 15A-903(e) does not specify type of testing procedures to be allowed, question must be decided by reference to due-process principles).

We have carefully reviewed the record, and we do not find that defendant made a credible showing to the trial judge that the additional examinations he requested would have been probative. The last alleged incidence of abuse was 29 March; the new examinations would have taken place some six months later. Defendant made no showing that dilations, in September, of less than four millimeters would demonstrate that no penetration had occurred in February and March. He made no showing that normal measurements would not have been the result of vaginal constriction rather than non-abuse.

Additionally, defendant made no showing that the new examinations were necessary. Had defendant submitted Dr. Forestner's report to a second physician, and had the physician opined that Dr. Forestner's conclusion was inconsistent with the physical findings, and had the physician indicated he needed to conduct additional examinations to effectively testify on defendant's behalf, then defendant would have made a strong showing of necessity both to the trial judge and on appeal. In this case, however, defendant never gave Dr. Forestner's report to a second expert. Consequently, it was merely defendant's opinion that the first examinations had produced inconsistent results, and it was merely defendant's opinion that additional examinations were needed. We hold, therefore,

that the trial judge properly found that the interests of the children required that defendant's motion be denied.

We do not imply that a defendant charged with offenses such as these is precluded, in all cases, from receiving an independent medical examination of the alleged victim. On appeal, both the State and defendant have focused on North Carolina cases in which criminal defendants have asked trial judges to compel witnesses to undergo psychiatric examinations. The law in this State is that a judge has no discretionary power to require an *unwilling* witness to submit to such an examination. *See State v. Looney*, 294 N.C. 1, 240 S.E. 2d 612 (1978); *State v. Clontz*, 305 N.C. 116, 286 S.E. 2d 793 (1982). In our view, a trial judge would have the discretionary power to permit a second physical examination of an alleged sexual-abuse victim if the defendant shows the court that the examination would be probative, that it is necessary to the defendant's preparation of his defense, and if the victim or the victim's guardian consents to the examination. When, in a case such as this one, four life sentences are in part contingent on a distance of four millimeters, a defendant should not be absolutely foreclosed from having his own expert examine the alleged victim. In this case, however, defendant failed to make a preliminary showing to the judge that the examinations would be probative and were necessary, and thus we overrule this assignment of error.

## II

### A

[2] On 8 July 1987, defendant filed a motion for a bill of particulars. On that same day, he filed a motion *in limine* asking that the State be allowed to present only such evidence as related to the 14 February and 29 March offenses. The trial judge denied defendant's motion *in limine*. The judge ruled that the children's testimony concerning prior episodes of abuse would show that "defendant engaged in a scheme whereby he took sexual advantage of the availability and the susceptibility of his young daughters at the times they were left in his custody." In addition, the judge ruled that the probative value of the evidence of other sexual acts outweighed any unfair prejudice to defendant. At trial, the judge permitted A. H. and T. H. to answer questions such as "[h]as your father ever put his ding dong inside you in the past?" Both children testified to having been subjected to abuse by defendant on other occasions; A. H. claimed her father had molested them

for a "couple of years." Subsequent witnesses for the State testified about statements the children had made to them about defendant's history of abusive behavior.

B

Defendant contends that the judge committed reversible error by denying his motion *in limine*. He argues that the State's bill of particulars, which mentioned only the 14 February and 29 March incidents, precluded the State from introducing evidence of sexual conduct involving defendant and the children on earlier dates. Defendant claims he geared his defense to the charges specified in the bill of particulars and that it was impossible for him to present a defense to the "scatter gun of accusations and allegations" the judge allowed the State to put before the jury. Finally, he contends that the prejudicial nature of the evidence outweighed its probative value.

N.C. Gen. Stat. Sec. 8C-1, R. Evid. 404(b) (1988) in part says that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." As we observed in *State v. Patterson*, so many exceptions now exist to the general rule prohibiting evidence of other crimes "that it is difficult to determine which is more extensive, the doctrine of exclusion or its acknowledged exceptions." 66 N.C. App. 657, 658, 311 S.E. 2d 683, 684 (1984) (citations omitted). Rule 404(b) itself specifies that other-crime evidence is "admissible for . . . purposes [other than proving character], such as proof of . . . [a] plan." This "common scheme or plan" exception has been explained by our Supreme Court this way: "Evidence of other crimes is admissible when it tends to establish a common plan or scheme embracing the commission of a series of crimes so related to each other that proof of one or more tends to prove the crime charged and to connect the accused with its commission." *State v. McClain*, 240 N.C. 171, 176, 81 S.E. 2d 364, 367 (1954) (citations omitted).

In the view of Professor Brandis, some North Carolina cases may be criticized for the use of the common-scheme-or-plan exception to prove, in effect, that the defendant possesses the character to commit the crime for which he is being tried. Brandis, *1 Brandis on North Carolina Evidence* Sec. 92, n. 36 (1988). Notwithstanding, it is the practice in this State "liberally" to admit evidence of similar sex crimes under this exception. *See, e.g., State v. Frazier*,

319 N.C. 388, 390, 354 S.E. 2d 475, 477 (1987) (evidence of a continuing scheme against victim relevant to show defendant was perpetrator of offense on particular date); *State v. Sills*, 311 N.C. 370, 378, 317 S.E. 2d 379, 384 (1984) (courts have held admissible, in particular, evidence showing prior similar sex crimes committed by defendant on same victim). We find nothing in the facts of this case to distinguish it from those cases in which our courts have held evidence of prior similar sex acts to be admissible. In this case, the testimony was in line with the type of evidence our courts have permitted in the past under the common-scheme-or-plan exception.

The admission of evidence of similar sex crimes under the plan exception of Rule 404(b) is subject to a determination that the probative value of that evidence outweighs any risk or undue prejudice to the defendant. *See* N.C. Gen. Stat. Sec. 8C-1, R. Evid. 403 (1988); *Frazier*, 319 N.C. at 390, 354 S.E. 2d at 477. Determining whether or not to exclude the evidence under Rule 403 rests within the sound discretion of the trial judge. *Id.* We cannot say, in the light of previous cases involving this issue, that the trial judge abused his discretion by allowing the evidence of prior sexual crimes allegedly committed by defendant upon his children.

This assignment of error is overruled.

III

Defendant argues that the trial judge erred by denying his motion, made at the close of all the evidence, to dismiss the charges against him. Defendant contends that, in particular, the State failed to present evidence to support the jury's findings that defendant committed a first degree sexual offense on A. H. and that he took indecent liberties with the children. In two additional assignments of error, defendant has contended that the weight of the evidence did not support the jury's verdict and that the judge's imposition of consecutive life sentences was excessive given the evidence. We shall consider these three assignments of error together.

A

[3] 1. A person commits the crime of first degree sexual offense when he engages in a "sexual act" with a child who is under the age of 13 and the defendant is at least 12 years old and at least four years older than the victim. N.C. Gen. Stat. Sec. 14-27.4(a) (1986). Fellatio is a "sexual act." N.C. Gen. Stat. Sec. 14-27.1(4) (1986).

The bill of particulars listed fellatio as the act that occurred between defendant and A. H. on 14 February. In accordance with that bill, the judge charged the jury that to convict defendant of a first degree sex offense, it had to find, among other things, that defendant and A. H. engaged in fellatio. The judge correctly instructed the jury that fellatio "is any touching by the lips or tongue of one person of the male sex organ of another." *See State v. Bailey*, 80 N.C. App. 678, 682, 343 S.E. 2d 434, 437 (1986), *rev. dismissed*, 318 N.C. 652, 350 S.E. 2d 94 (1986).

At trial, A. H. testified that defendant penetrated her vagina with his finger on 14 February, but she responded "I don't think so" when the assistant district attorney asked if defendant had done anything else to her. T. H., however, testified that she and A. H. "touched" defendant's penis "with [their] lips" when the three were in the car. From T. H.'s testimony, and by following the judge's instruction, the jury could have found that fellatio was performed on defendant by A. H. on 14 February. We find untenable defendant's contention that there is no evidence in the record to support the jury's finding as to this charge.

[4]  2. The judge charged the jury that to convict defendant of taking indecent liberties with A. H. and T. H. on 29 March it had to find that defendant took an "indecent liberty"—which the judge defined as "an immoral, improper, or indecent touching by the defendant upon the child[ren]"—for the purpose of arousing or gratifying defendant's sexual desire, that the children were under the age of 16, and that defendant was at least five years older than the children and was at least 16 years old himself. *See* N.C. Gen. Stat. Sec. 14-202.1 (1986). The testimony of the children more than adequately demonstrated that defendant took indecent liberties with them on 29 March. For example, our Supreme Court has held that a person may be convicted of both rape and indecent liberties without being placed in double jeopardy since vaginal intercourse is not an element of indecent liberties, and committing the act for sexual gratification is not an element of rape. *State v. Rhodes*, 321 N.C. 102, 106-07, 361 S.E. 2d 578, 581 (1987). The children's testimony showed that defendant raped each of them on 29 March, and this same evidence, therefore, supported a finding that he had taken indecent liberties with them. Furthermore, a jury may infer that the defendant engaged in the conduct for the purpose of gratifying his sexual desire, and the jury in this case

STATE v. HEWETT

[93 N.C. App. 1 (1989)]

could very properly have drawn such an inference from the State's evidence. *See id.* at 105, 361 S.E. 2d at 580.

In addition, we note that the judge's instruction benefited defendant in that the State need not prove a touching of the child to prove the elements of indecent liberties. *State v. Hicks*, 79 N.C. App. 599, 603, 339 S.E. 2d 806, 809 (1986). We have upheld convictions for taking indecent liberties with a child in cases in which a defendant masturbated in the presence of a child, *State v. Turman*, 52 N.C. App. 376, 278 S.E. 2d 574 (1981), and when a defendant exposed his penis and placed his hand on it. *Hicks*, 79 N.C. App. at 604, 339 S.E. 2d at 809. In this case, the evidence was that defendant disrobed in the children's presence, and that he engaged in intercourse with each child in the presence of the other. Even if this charge had been based solely on defendant's causing the children to *witness* the sexual conduct, the State, in our view, would have adequately proven the elements of the indecent liberties offenses.

B

We summarily reject defendant's contention that the sentences were excessive given the evidence.

In summary, we overrule defendant's assignment of error as to the judge's refusal to dismiss the charges. At the same time, we overrule those assignments of error addressed to the jury's verdict and the judge's sentences. The State's evidence clearly supported the jury's verdict and belies defendant's contention that the sentences imposed upon him were disproportionate.

IV

[5] Defendant assigns error to the trial judge's refusal to grant a continuance before conducting the sentencing phase of the trial. After the judge had excused the jury, defendant moved for a continuance and requested a presentencing diagnostic examination. The judge denied the motion, saying, "I'm inclined to go on with the [the hearing], particularly since I don't have any [leeway] in at least four of the sentences." Defendant proceeded to present his evidence.

A defendant may obtain a continuance of his sentencing hearing upon a showing of good cause to the trial court. N.C. Gen. Stat. Sec. 15A-1334(a) (1988). A determination of good cause is within the trial judge's discretion. *See, e.g., State v. Bush*, 78 N.C. App.

686, 692, 338 S.E. 2d 590, 593 (1986). This court will not disturb a judgment because of sentencing procedures unless the defendant shows an abuse of discretion or "circumstances which manifest inherent unfairness and injustice." *State v. Pope*, 257 N.C. 326, 335, 126 S.E. 2d 126, 133 (1962). Defendant contends that the judge demonstrated such "unfairness and injustice" by remarking that four of the sentences were non-discretionary. He argues that the judge misapprehended the law and believed he had to sentence defendant to consecutive life terms for the rape and sex offense convictions. Defendant contends that a continuance would have enabled him to present evidence that might have resulted in concurrent, rather than consecutive, life terms.

We have reviewed the sentencing proceeding, and we do not believe that the judge labored under a mistaken notion that our statutes mandated consecutive life sentences for four of defendant's convictions. At the hearing, the State explicitly asked for consecutive terms, and defendant explicitly asked that the sentences run concurrently. Likewise, we do not believe defendant demonstrated good cause to continue the hearing. This assignment of error is overruled.

V

[6] Defendant contends the trial judge committed reversible error when he permitted A. H. to interrupt her testimony and leave the courtroom accompanied by a rape crisis counselor, the assistant district attorney prosecuting the case, and the district attorney. Defendant has challenged, once more, the trial judge's exercise of his discretion.

In *State v. Higginbottom*, 312 N.C. 760, 324 S.E. 2d 834 (1985), a four-year-old victim of a sex offense became emotionally upset when she was asked to testify about what the defendant had done to her. The court ordered a recess, during which time the victim went to the district attorney's office. Our Supreme Court noted that a trial judge has "large discretionary power" as to the conduct of a trial and held that the judge did not abuse his discretion by ordering the recess. *Id.* at 769-70, 324 S.E. 2d at 841.

We, also, do not see an abuse of discretion by the trial judge in this case. A nine-year-old child was testifying about sexual abuse committed upon her by her father. The judge acted properly by calling a recess to afford A. H. an opportunity to regain her composure. We overrule this assignment of error.

STATE v. HEWETT

[93 N.C. App. 1 (1989)]

## VI

### A

[7] Defendant assigns error to the trial judge's allowing A. H. to testify as to her truthfulness. He argues that A. H.'s statements constituted improper character evidence in contravention of N.C. Gen. Stat. Sec. 8C-1, R. Evid. 608(a) (1988).

Defendant first excepts to an exchange that took place between the assistant district attorney and A. H. on direct examination. During this exchange, the State asked A. H., "Do you recall indicating earlier that you understood what it meant to tell the truth?" We have read this question in its context, and do not believe it was improper. The question occurred at a point in the testimony when the State was attempting to have A. H. describe what defendant had done to her. The child was not responding to the State's questions. We view the question simply as an attempt by the assistant district attorney to prompt A. H. to speak. We do not find that it constituted evidence of A. H.'s character.

Following cross-examination, during which defense counsel asked A. H. if she had ever told a lie, the State asked A. H. if she had testified truthfully. While such a question is, perhaps, inartful, we do not find that the judge erred by allowing the question. We agree with the State that a witness' statement that she had testified truthfully is not character evidence. Rather, the question is analogous to situations in which a witness makes an in-court identification, and the State then asks, "Are you sure that person is the one you saw?" We think, given the context, that the question was a proper one to ask on re-direct examination.

Even if error had resulted from the asking of either or both of the questions, we would find the error to be harmless. Defendant has not shown, and we think could not show, that his conviction in any way derived from A. H.'s answers to the questions defendant complains of here. See State v. Fletcher, 279 N.C. 85, 92, 181 S.E. 2d 405, 410 (1971). This assignment of error is overruled.

### B

[8] In a related assignment of error, defendant claims the trial judge erred when he did not permit a defense witness to testify as to specific instances of untruthfulness by the children. On direct examination, defendant's lawyer asked defendant's girlfriend if she had an opinion as to the children's "character for truthfulness."

She answered, "They're not very truthful children." The lawyer then asked, "Can you give us a specific instance of their untruthfulness?" The State objected, and the judge sustained the objection. Defendant then made an offer of proof in which defendant's girlfriend testified the children would blame one another to avoid being punished for misbehavior, that they "[would say] whatever would benefit them." The judge again sustained the objection following the offer of proof.

Counsel may not question a witness on direct examination concerning specific acts indicative of character. *See, e.g., State v. Denny*, 294 N.C. 294, 298, 240 S.E. 2d 437, 439 (1978). The trial court, therefore, properly disallowed defendant's line of questioning, and this assignment of error is overruled.

## VII

[9] Defendant addresses two assignments of error to the use of exhibits at trial. He contends the judge erred by permitting the children to use anatomical dolls during their testimony and that the judge erred by allowing A. H. to testify about a drawing she had made and by allowing that drawing to be admitted in evidence.

## A

In *State v. Fletcher*, our Supreme Court noted it had "never disapproved of the practice" of allowing children in sexual abuse cases to illustrate their testimony with anatomical dolls. 322 N.C. 415, 421, 368 S.E. 2d 633, 636-37 (1988). The Court elaborated that the use of dolls "is wholly consistent with rules governing the use of photographs and other items to illustrate testimony." *Id.* This assignment of error is overruled.

## B

Drawings are admissible in evidence. *E.g.,* 1 *Brandis*, at Sec. 34. The judge did not err by admitting A. H.'s drawing. He did not err, moreover, by allowing A. H. to use the drawing to illustrate her testimony and to testify about how she made the drawing. *See id.* We overrule this assignment of error.

## VIII

[10] Defendant addresses three assignments of error to corroborative testimony offered by the State. Dr. Forestner and Iris Derrick,

STATE v. HEWETT

[93 N.C. App. 1 (1989)]

a social worker with the Brunswick County Department of Social Services, each testified about statements made to them concerning the abuse of A. H. and T. H. The judge gave the jury two limiting instructions, telling the jury they could consider the statements only for corroborative purposes. A third witness for the State, Detective Nancy Simpson, also testified about statements made to her; although defendant did not request a limiting instruction, the judge gave one after Detective Simpson testified.

Corroborative evidence is admissible if the prior statements tend to add weight or credibility to the witness' testimony. See State v. Ramey, 318 N.C. 457, 469, 349 S.E. 2d 566, 573 (1986). The judge did not err, therefore, by allowing the corroboration testimony of the three witnesses. This assignment of error is overruled.

## IX

### A

Defendant alleges that the trial judge allowed the assistant district attorney to pursue a highly prejudicial line of questioning during her cross-examination of defendant. The trial judge sustained several of defense counsel's objections to the questions defendant contends were improper. We hold that those questions the judge did allow were relevant to the issue of defendant's guilt, and thus there was no error when he overruled defendant's objections to them.

### B

[11] Defendant also bases an assignment of error on the State's closing argument. During her closing argument, the assistant district attorney attempted to read a passage from State v. Galloway, 304 N.C. 485, 284 S.E. 2d 509 (1981). Defendant objected, and the trial judge sustained the objection. We, therefore, see no basis for defendant's complaint on appeal that the State attempted to read from Galloway.

Defendant further complains that the trial judge erred by allowing the assistant district attorney to quote from the Bible during her argument to the jury. Defendant cites no authority forbidding Biblical quotation. He cannot do so since our Supreme Court has refused to hold that it is inherently improper to quote from or refer to the Bible. See State v. Brown, 320 N.C. 179, 206, 358 S.E. 2d 1, 19 (1987), cert. denied, --- U.S. ---, 98 L.Ed. 2d 406

(1987) (reference to Bible); *State v. Hunt,* 323 N.C. 407, 427, 373 S.E. 2d 400, 413 (1988) (quoting from Bible).

At a third point in the State's closing argument, defendant objected and claimed the assistant district attorney was implying that defendant had charged the State with fabricating its case against him. The judge sustained the objection. Defendant now contends he suffered prejudice as a result of the State's assertion. Once again, defendant's reason for claiming prejudice escapes us. We overrule this assignment of error.

## X

**[12]** Defendant assigns error to the trial judge's refusal to give defendant's requested jury instructions. Defendant contends the judge should have given defendant's proffered instructions on alibi, on the credibility of child witnesses, and on expert witnesses. First, defendant's request for the instruction on expert testimony came after the judge had instructed the jury, and defendant made his request orally. The judge, therefore, properly refused to give defendant's instruction. *See* N.C. Gen. Stat. Sec. 15A-1231(a) (1988); *State v. Harris,* 47 N.C. App. 121, 123, 266 S.E. 2d 735, 737 (1980), *cert. denied,* 305 N.C. 762, 292 S.E. 2d 577 (1982) (requests for special instructions must be written and submitted before beginning of charge by judge).

Second, defendant's requested instruction as to alibi was, as he points out, a variation of a pattern jury instruction, N.C.P.I. Crim. 301.10. That instruction explicitly defines the word "alibi" as meaning "somewhere else." Defendant acknowledges that a trial judge is not required to give a requested instruction unless the instruction is a correct statement of the law and is supported by the evidence. *State v. Corn,* 307 N.C. 79, 86, 296 S.E. 2d 261, 266 (1982). The judge pointed out that defendant had not contended he was somewhere else at the time of the offenses; rather, he denied the offenses had occurred. Defendant conceded to the judge that his defense was not "straight alibi." We do not think the judge erred by refusing to give defendant's requested instruction on alibi.

Finally, defendant's requested instruction about child witnesses was "an addition" to N.C.P.I. Crim. 101.15. Defendant's instruction would have added that the jury could consider the age and maturity of the witnesses, their ability to appreciate the significance of testifying under oath, and "young children's . . . tendency to pretend

STATE v. HEWETT

[93 N.C. App. 1 (1989)]

and fantasize and inability to recall specific factual details; also their susceptibility or exposure to adult influences . . . ."

A trial judge is not required to give a special instruction on the credibility of child witnesses. *State v. Bolton*, 28 N.C. App. 497, 499, 221 S.E. 2d 747, 748 (1976), *appeal dismissed*, 289 N.C. 616, 223 S.E. 2d 390 (1976). The decision whether to instruct the jury respecting a child's credibility is, again, a matter of the judge's discretion since the "trial judge can more accurately determine those instances when the instruction would be appropriate." *Id.* We see no abuse of discretion in the judge's refusal to give a special instruction as to the credibility of A. H. and T. H. This assignment of error is overruled.

## XI

[13] Defendant contends the trial judge erred by excusing a juror after the juror told the court he might be related to the defendant. At the time the judge reopened the examination of the juror, the State had one peremptory challenge left to it. Since the State could have exercised this challenge had the judge not removed the juror, defendant cannot claim that the trial judge's action prejudiced him. *See State v. Barts*, 316 N.C. 666, 680-81, 343 S.E. 2d 828, 838 (1986). We overrule this assignment of error.

## XII

Defendant contends the trial judge erred by finding A. H. and T. H. competent to testify. We believe the record clearly indicates that the judge ruled correctly on this question, and we overrule this assignment of error.

## XIII

We find no error in the trial of this case.

No error.

Judges WELLS and JOHNSON concur.